UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**GEORGE R. KABELLER, PEDRO GONZALEZ, ALEXANDER KINGHORN,**

        **Plaintiffs,**

-vs-                                  Case No.  6:04-cv-1106-Orl-19DAB

**ORLANDO REGIONAL HEALTHCARE SYSTEM, INC.,**

        **Defendant.**

_____

# ORDER

This case comes before the Court on the Motion of Orlando Regional Healthcare System, Inc. ["ORHS"] to Dismiss the Complaint (Doc. No. 53, filed Nov. 19, 2004); Memorandum of Law in Support of the Motion to Dismiss the Complaint (Doc. No. 54, filed Nov. 19, 2004); and Plaintiffs' Opposition to the Motion to Dismiss the Complaint (Doc. No. 59, filed Dec. 7, 2004).

## Background

Plaintiffs have filed a putative Class Action Complaint alleging that Defendant ORHS[1] engages in billing and collection practices which are discriminatory and unfair to its uninsured patients. (Doc. No. 1, filed July 21, 2004).  The relevant facts according to the Complaint are as follows.  Plaintiff George Kabeller sought emergency treatment for a broken leg at Orlando Regional Medical Center, an ORHS facility, on June 6, 2002, whereupon he was admitted and

---

[1] Plaintiffs voluntarily dismissed Count Eight (Civil Conspiracy/Concert of Action) and Count Nine (Aiding and Abetting) asserted against the American Hospital Association ("AHA") with prejudice as to the underlying federal claims and without prejudice as to the underlying claims based on state law.  (Doc. No. 82, filed July 7, 2005).  The Court approved such dismissal, and AHA is no longer a defendant in this action.  (Doc. No. 85, filed July 27, 2005).

hospitalized for two days. (*Id.*, ¶ 27). Mr. Kabeller was uninsured at the time of his treatment and was subsequently charged approximately $53,000 for the care he received. (*Id.*). On August 3, 2003, Plaintiff Pedro Gonzalez went to Orlando Regional Medical Center seeking treatment for respiratory difficulties. (*Id.*, ¶ 31). Also uninsured, Mr. Gonzalez was admitted to the hospital for one night; upon his release he was charged $7,395.50 for the services provided to him. (*Id.*). Finally, uninsured Plaintiff Alexander Kinghorn sought treatment at Orlando Regional Medical Center for severe burns on April 22, 2000, and was hospitalized for approximately two weeks. (*Id.*, ¶ 35). Mr. Kinghorn was charged $59,023 for the care and treatment he received during his stay at the hospital. (*Id.*). Plaintiffs allege that they were each charged an amount which "far exceeded the actual cost of providing the care and treatment [and] also far exceeded the amount that ORHS would charge insurance companies, Medicare or Medicaid for the same medical care and treatment." (*Id.*, ¶¶ 28, 32, 36). Plaintiffs further allege that these excessive charges have left them in "tenuous and uncertain" (*Id.*, ¶¶ 29, 33) or "difficult" (*Id.*, ¶ 37) financial positions.

Count One of the Complaint asserts that by receiving a valuable federal income tax exemption as a charitable entity pursuant to 26 U.S.C. § 501(c)(3),[2] ORHS has "entered into an express and/or implied Agreement with the United States Government" for the benefit of Plaintiffs and putative class members as uninsured third parties. (*Id.*, ¶¶ 51, 53). Plaintiffs assert that by the terms of such agreement, ORHS has agreed to provide emergency medical treatment

---

[2] Section 501(c)(3) of the Internal Revenue Code exempts from federal taxation "[c]orporations...organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes...no part of the net earnings of which inures to the benefit of any private shareholder or individual...." 26 U.S.C. § 501(c)(3).

without regard to Plaintiffs' ability to pay, to "provide mutually affordable medical care" to Plaintiffs, to "not pursue outstanding medical debt from [Plaintiffs] by engaging in aggressive, abusive, and humiliating collection practices," and to "not provide financial inurement to private individuals or entities." (*Id.*, ¶ 51). Plaintiffs allege that ORHS breached its agreement with the United States pursuant to the Internal Revenue Code in a variety of ways, including failing to provide emergency care without regard to Plaintiffs' ability to pay, charging Plaintiffs for the "full undiscounted cost of medical care," charging Plaintiffs "significantly more than its insured patients for the same medical services," and "utilizing aggressive, abusive, and humiliating collection practices" to collect such sums from Plaintiffs. (*Id.*, ¶ 54). Thus Plaintiffs seek to enforce ORHS' alleged agreement with the United States as its intended third party beneficiaries.[3] Plaintiffs further allege in Count Three that ORHS has violated the duty of good faith and fair dealing implicit in its alleged contractual agreement with the United States pursuant to § 501(c)(3).[4] (*Id.*, ¶¶ 62–65).

In Count Four, Plaintiffs assert that by accepting § 501(c)(3) tax exemptions, ORHS "created and entered into a public charitable trust to provide mutually affordable medical care to its uninsured patients," of which trust Plaintiffs are the intended beneficiaries. (*Id.*, ¶¶ 68–69). Plaintiffs claim that ORHS has breached such trust by engaging in the activities alleged *supra*

---

[3] Count One asserts a similar claim with regard to ORHS' alleged agreement with the State of Florida as a public charity receiving state income, property and sales tax exemptions pursuant to *Florida Statutes* §§ 196.192, 196.197, 199.183 and Article VII, § 3 of the Florida Constitution. (Doc. No. 1, ¶¶ 52, 54).

[4] The breach of good faith and fair dealing claim asserted in Count Three is also applies to Plaintiffs' state-based third party breach of contract theory, *see* note 2 *supra*, as well as to their direct breach of contract claim asserted in Count Two, *infra*. (*Id.*, ¶¶ 63–64).

and that they "have not received the benefit of the charitable trust created for their benefit."[5] (*Id.*, ¶ 70).

Count Six of the Complaint asserts a claim for violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. (*Id.*, ¶¶ 81–83). Plaintiffs allege that ORHS' Orlando Regional Medical Center is a "participating hospital" under the Act, intended "to prohibit hospitals from denying or delaying emergency medical treatment to patients without medical insurance because of their uninsured status."[6] (*Id.*, ¶¶ 81–82). They claim that ORHS violated EMTALA by requiring them "to sign form contracts agreeing to pay ORHS in full for unspecified and undiscounted medical charges" before it provided them with necessary emergency screening and medical treatment. (*Id.*, ¶ 83). Plaintiffs allege that the EMTALA violations by ORHS caused them "economic injury and other damages." (*Id.*, ¶ 84).

In addition to these federal claims, the Complaint asserts several state law-based claims including breach of an express or implied contract entered into directly between ORHS and Plaintiffs (Count Two), violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count Five), and unjust enrichment and constructive trust (Count Seven). (*Id.*). Plaintiffs seek injunctive and declaratory relief (Count Ten) in addition to monetary damages (Count Eleven). (*Id.*).

---

[5] Plaintiffs also allege the formation and breach of a similar charitable trust pursuant to the favorable tax status enjoyed by ORHS under Florida law, *see* note 2 *supra*. (*Id.*, ¶¶ 68–70).

[6] EMTALA requires a hospital to provide to an emergency patient "an appropriate medical screening examination" and to "provide...such further medical examination and such treatment as may be required to stabilize the medical condition..." without delay "in order to inquire about the individual's method of payment or insurance status." 42 U.S.C. § 1395dd(a), (b)(A), (h). The statute permits civil enforcement by "[a]ny individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section." § 1395dd(d)(2)(A).

ORHS now moves the Court to dismiss Plaintiffs' federal claims for failure to state a claim upon which relief may be granted and further requests that the Court decline to exercise its supplemental jurisdiction over Plaintiffs' state law claims and to dismiss such claims for want of subject matter jurisdiction. (Doc. No. 53).

## Standard of Review

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Furthermore, the Court must limit its consideration to the pleadings and written instruments attached as exhibits thereto. *Fed R. Civ. P.* 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## Discussion

*Plaintiffs' § 501(c)(3) and EMTALA Claims*

This lawsuit is one among many which have been filed in federal courts across the country seeking relief on behalf of putative classes of uninsured patients on legal theories identical to those advanced by Plaintiffs.[7] To date, however, every district court to have

---

[7] These cases were submitted to the Judicial Panel for Multidistrict Litigation for consolidation, but this motion to transfer was denied. *See In re Not-for-Profit Hospitals/ Uninsured Patients Litigation*, 341 F. Supp. 2d 1354 (J.P.M.L. Oct. 19, 2004).

considered the merits of such a suit has dismissed all federal claims based on § 501(c)(3) of the Internal Revenue Code.

Uniformly, courts have ruled as a matter of law that (1) acceptance of a federal tax exemption pursuant to § 501(c)(3) creates neither a contractual relationship between the exempt organization and the United States nor a charitable trust for the benefit of the public and (2) even if such a contract or trust existed, § 501(c)(3) does not confer on alleged third party beneficiaries a private right to sue, and thus such individuals have no standing to enforce the provisions of the statute. *See Cygan v. Resurrection Med. Ctr.*, Case No. 04 C 4168 (N.D. Ill. July 27, 2005) (relying on *Watts v. Advocate Health Care Network*, Case No. 04 C 4062 (E.D. Ill. Mar. 30, 2005)); *Bobo v. Christus Health*, 227 F.R.D. 479 (E.D. Tex. Apr. 26, 2005); *Amato v. UPMC*, 371 F. Supp. 2d 752 (W.D. Pa. Apr. 21, 2005); *Ellis v. Phoebe Putney Health Sys., Inc.*, Case No. 1:04-cv-80 (M.D. Ga. Apr. 8, 2005); *Corely v. John D. Archibald Mem. Hosp., Inc.*, Case No. 1:04-cv-110 (M.D. Ga. Mar. 31, 2005); *Watts*, Case No. 04 C 4062 (E.D. Ill.); *Kolari v. New York-Presbyterian Hosp.*, 2005 WL 710452 (S.D.N.Y. Mar. 29, 2005); *Valencia v. Mississippi Baptist Med. Ctr., Inc.*, 363 F. Supp. 2d 867 (S.D. Miss. Mar. 29, 2005); *Fields v. Banner Health*, Case No. CIV-04-1297 (D. Ariz. Mar. 23, 2005); *Jellison v. Florida Hosp. Healthcare Sys., Inc.*, Case No. 6:04-cv-1021 (M.D. Fla. Mar. 14, 2005); *Wright v. St. Dominic Health Servs, Inc.*, 2005 WL 743339 (S.D. Miss. Mar. 1, 2005); *Quinn v. BJC Health Sys.*, 364 F. Supp. 2d 1046 (E.D. Mo. Mar. 1, 2005); *Sabeta v. Baptist Hosp. of Miami, Inc.*, Case No. 04-21437-CIV (S.D. Fla. Feb. 23, 2005); *Schmitt v. Protestant Mem'l Med. Ctr., Inc.*, Case No. 04-cv-00577 (S.D. Ill. Feb. 23, 2005); *Hagedorn v. St. Thomas Hosp., Inc.*, Case No. 3:04-0526 (M.D. Tenn. Feb. 7, 2005) (adopting *Lorens v. Catholic Health Care Partners*, 356 F. Supp. 2d 827

(N.D. Ohio Jan. 13, 2005)); *Peterson v. Fairview Health Serv.*, 2005 WL 226168 (D. Minn. Feb. 1, 2005); *Daly v. Baptist Health*; Case No. 4:04-cv-789 (W.D. Ark. Jan. 31, 2005); *Washington v. Med. Ctr. of Cent. Georgia, Inc.*, Case No. 5:04-cv-185 (M.D. Ga. Jan. 21, 2005); *Hogland v. Athens Regional Health Serv., Inc.*, Case No. 3:04-cv-50 (M.D. Ga. Jan. 21, 2005) (adopting opinion in *Washington*, Case No. 5:04-cv-185 (M.D. Ga.)); *Shriner v. ProMedica Health Sys., Inc.*, 2005 WL 139128 (N.D. Ohio Jan. 21, 2005); *Hudson v. Cent. Georgia Health Serv.*, Case No. 5:04-cv-301 (M.D. Ga. Jan. 13, 2005); *Lorens*, 356 F. Supp. 2d 827; *Ferguson v. Centura Health Corp.*, 358 F. Supp. 2d 1014 (D. Colo. Dec. 29, 2004); *Burton v. William Beaumont Hosp.*, 347 F. Supp. 2d 486 (E.D. Mich. Dec. 3, 2004); *Darr v. Sutter Health*, Case No. C 04-02624 (N.D. Cal. Nov. 30, 2004).

Moreover, courts which have interpreted the provisions of EMTALA in light of factual allegations substanially identical to those in the instant case have ruled that in the absence of allegations that a plaintiff was delayed in receiving proper emergency medical screening for the purpose of ascertaining his insurance status or ability to pay, and where there are no allegations of *personal injury* resulting from a defendant's violation of the Act but merely economic injury, there can be no relief.  See, e.g., *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 714–16 (E.D. Mich. June 20, 2005); *Jakubiec v. Sacred Heart Health Sys., Inc.*, 2005 WL 1261443 (N.D. Fla. May 27, 2005); *Amato*, 371 F. Supp. 2d at 758–59; *Ellis*, Case No. 1:04-cv-80, p. 8–9 (M.D. Ga. Apr. 8, 2005); *Corely*, Case No. 1:04-cv-110, p. 9–10 (M.D. Ga. Mar. 31, 2005); *Watts*, Case No. 04 C 4062, p. 6 (E.D. Ill. Mar. 30, 2005); *Valencia*, 363 F. Supp. 2d at 879–80; *Jellison*, Case No. 6:04-cv-1021, pp. 13–15 (M.D. Fla. Mar. 14, 2005); *Wright*, 2005 WL 743339 at *3–4; *Quinn*, 364 F. Supp. 2d at 1053–54; *Sabeta*, Case No. 04-21437-CIV, pp.

14–16 (S.D. Fla. Feb. 23, 2005); *Peterson*, 2005 WL 226168 at *8–9; *Washington*, Case No. 5:04-cv-185, pp. 11–13 (M.D. Ga. Jan. 21, 2005); *Kizzire v. Baptist Health Systems, Inc.*, 343 F. Supp. 2d 1074, 1084 (N.D. Ala. Oct. 21, 2004). Nowhere in the Complaint do Plaintiffs allege that they were denied proper emergency screening or medical treatment, that their screening or treatment were delayed, that they received inadequate treatment at the hands of ORHS, or that they suffered physical injury as a result of ORHS' alleged violations of EMTALA.

In the face of this overwhelming and ever-growing body of case law which directly contradicts Plaintiffs' position on their § 501(c)(3) and EMTALA claims, it is noteworthy that they have failed to cite to the Court a single ruling by which another court has recognized the specific causes of action asserted in their Complaint and permitted such claims to proceed.[8] The Court has examined the case law, has considered Plaintiffs' arguments in opposition to ORHS' motion to dismiss, and finds that they are substantially similar to those arguments considered and rejected by the courts cited *supra*. In light of the many well-reasoned opinions already rendered amidst this barrage of identical lawsuits, the Court finds it unnecessary to reinvent the wheel or to restate that which already has been so clearly articulated. Therefore, the Court adopts the reasoning set forth by the Southern District of Mississippi in *Valencia*, 363 F. Supp. 2d at 879–80 and in another case in this district, *Jellison*, Case No. 6:04-cv-1021 (M.D. Fla. Mar. 14,

---

[8] With respect to their EMTALA claim, Plaintiffs cite a case in which a whistleblower was permitted to pursue a claim against his employer for the economic damages he suffered when he was fired in retaliation for reporting his employer's alleged EMTALA violations. *See Fotia v. Palmetto Behavioral Health*, 317 F. Supp. 2d 638, 644 (D.S.C. 2004). *Fotia* is clearly distinguishable, however, as it relied specifically on the statute's proscription of retaliation against whistleblowers. *Id.*

2005) (Antoon, J.). Accordingly, the Court will dismiss Plaintiffs' claims to the extent that they are based on § 501(c)(3) or EMTALA.

*Plaintiffs' State Law Claims*

The only remaining claims before the Court are those asserted by Plaintiffs' in their Complaint pursuant to Florida law. This Court may decline to exercise supplemental jurisdiction over Plaintiffs' pendant state claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367. Where a court dismisses all federal claims prior to trial, it is "strongly encouraged or even require[d]" to dismiss the state claims over which it has no original jurisdiction. *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999). Accordingly, in the absence of independent grounds for exercising subject matter jurisdiction, the Court declines to exercise its § 1367 supplemental jurisdiction to hear Plaintiffs' state law-based claims.

**Conclusion**

Based on the foregoing, the Court rules as follows:

1. Orlando Regional Healthcare System, Inc.'s Motion to Dismiss the Complaint (Doc. No. 53) is **GRANTED**.

2. Counts One, Three, Four, and Six of the Complaint are **DISMISSED with prejudice** to the extent that they assert claims based on 26 U.S.C. § 501(c)(3) or 42 U.S.C. § 1395dd.

3. All other claims, to the extent that they are asserted on state law grounds, are **DISMISSED without prejudice**.

The Clerk is ordered to close this case.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this _11th___ day of August, 2005.

/s/ Patricia C. Fawsett
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record